JUDGE KARAS

06 CV 5657

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X

NATHANIEL WICE,

   Plaintiff,

- against -

THE INTERPUBLIC GROUP OF
COMPANIES, INC., AND McCANN
ERICKSON, INC.,

   Defendants.
------------------------------------X

06 Civ. ____

COMPLAINT

ECF CASE

PLAINTIFF DEMANDS
A TRIAL BY JURY

  Plaintiff Nathaniel Wice ("plaintiff" or "Wice"), through his attorneys, Vladeck, Waldman, Elias & Engelhard, P.C., complains of defendant The Interpublic Group of Companies, Inc. ("IPG"), and defendant McCann Erickson, Inc. ("McCann"), (collectively "defendants"), as follows:

## NATURE OF THE ACTION

  1. Plaintiff brings this action pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. to enforce plaintiff's rights under the terms of a welfare benefit plan. Plaintiff also brings this action to enforce his right to recover in breach of contract, or in the alternative, promissory estoppel, or to remedy unjust enrichment at common law.

  2. The plaintiff seeks injunctive and declaratory relief, damages, and other appropriate legal and equitable relief pursuant to ERISA and New York common law.

237428 v1

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the ERISA claims pursuant to 29 U.S.C. § 1132 and 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the New York common law claims pursuant to 28 U.S.C. § 1367.

4. As the unlawful acts complained of herein occurred or originated within the Southern District of New York, venue is proper within this District pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b).

## PARTIES

5. Plaintiff, a citizen of New York, was employed by defendants as the editorial director of The Publishing Agency ("TPA"), which was then a subsidiary of McCann, from February 2002 to July 2005. Plaintiff was a participant within the meaning of 29 U.S.C. § 1002(7) and an employee within the meaning of 29 U.S.C. § 1002(6).

6. Defendant IPG is a global marketing communications and services company. IPG is a Delaware corporation with its principal place of business in New York, New York.

7. Defendant McCann is a global advertising agency with its primary place of business in New York, New York. McCann is a subsidiary of IPG. McCann is an employer engaged in an activity affecting commerce within the meaning of 29 U.S.C. § 1003. The severance plan offered by McCann to employees was a welfare benefit plan within the meaning of 29 U.S.C. § 1002(1).

## FACTUAL ALLEGATIONS

8. Wice was hired by Kirk Cheyfitz ("Cheyfitz"), the Worldwide Managing Director of McCann Relationship Marketing ("MRM"), in February 2002 to serve as the editorial director of TPA, a publishing company with expertise in catalogue and trade publications, which

was a subsidiary of McCann until it was sold as a stand-alone company in July 2005. The offer letter Wice received regarding the editorial director position at TPA, dated February 21, 2002, was written on McCann letterhead and signed by Linda Sorbera ("Sorbera"), who at all relevant times was a Senior Vice President and the Director of Human Resources at McCann.

9. As the editorial director at TPA, Wice was responsible for managing magazine professionals in the creation of books, business journals, white papers, websites, annual reports, newsletters, and lifestyle magazines in the service of major corporate clients including Avaya, Bank of America, General Motors, Hallmark, Microsoft, Toyota, and UPS.

10. Plaintiff accepted the offer to work at TPA in February 2002, in part, because of the generous fringe benefits provided by IPG/McCann. In November 2001, when Cheyfitz initially approached Wice about the editorial director position at TPA, while plaintiff was still working at AOL/Time Warner's magazine division, Cheyfitz repeatedly told Wice that he would be entitled to benefits provided to IPG/McCann employees. These benefits, as detailed in McCann-Erickson and IPG documentation supplied to Wice, included tuition reimbursement for graduate studies.

11. In or about February 2002, after Wice accepted the employment offer from TPA, he attended a new employee orientation meeting. At that meeting, Wice was provided with a copy of "The Interpublic Group of Companies, Inc. Employee Handbook" (the "IPG employee handbook"). The IPG employee handbook provides a description of numerous fringe benefits provided to employees of IPG/McCann and its subsidiaries.

12. The "Educational Assistance Program" is one of the benefits listed in the IPG employee handbook. The IPG employee handbook states that any employee who has worked

for at least one year will be reimbursed 75 percent of tuition expenses if the undergraduate or graduate courses are job-related.

13. During the new employee orientation meeting, Wice was told that he was eligible to receive all of the benefits listed in the IPG employee handbook.

14. Upon his hiring and every year thereafter, Wice received a statement of benefits available to McCann employees. The 2004 statement includes a description of the Education Assistance Program, which states that McCann "provides 75% reimbursement of tuition at an accredited school and for credits, certificates or diplomas granted upon successful completion of coursework. Employees must be employed for one full year to be eligible." The statement of benefits for other years contained the same or similar language.

15. Wice's eligibility for participation in the Educational Assistance Program was reaffirmed by various human resources ("HR") representatives from TPA and McCann. In or about October 2002, Wice first requested information regarding tuition reimbursement. In response to his inquiry, Wice received a document outlining the procedure by which employees could request tuition reimbursement through the IPG/McCann Educational Assistance Program from Sacha Seraydarian ("Seraydarian"), a McCann HR representative, in an e-mail dated October 28, 2002. Wice received further clarification regarding the conditions for receiving tuition reimbursement under the Educational Assistance Program from Sorbera in an e-mail dated January 27, 2003. In that e-mail, Sorbera clearly suggested that Wice was eligible for participation in the tuition reimbursement program when she stated: "I am copying Lise [Katz] to provide you with any other details or necessary forms." Upon information and belief, Lise Katz ("Katz") was at all relevant times a McCann HR representative.

16. Wice relied on the IPG employee handbook as well as the repeated assertions of Cheyfitz and McCann HR representatives regarding his eligibility for the tuition reimbursement program. For this reason, Wice prepared for the Graduate Management Admission Test ("GMAT") from November 2002 to January 2003. After Wice learned that he had scored well enough on the GMAT to apply to competitive MBA programs, he devoted a considerable amount of time and expense to preparing applications for admission to various MBA programs including the Wharton MBA for Executives Program ("EMBA program") at the University of Pennsylvania.

17. Wice's application to various MBA programs included a recommendation letter written by plaintiff's supervisor, Cheyfitz. In the recommendation letter that was sent to the Wharton EMBA Program, Cheyfitz described the significant benefits that would accrue to McCann if plaintiff earned an MBA:

> To face a rapidly changing future in which creativity and business imperative must jointly guide our corporate future, McCann badly needs to cultivate a generation of leaders who understand both the creative process and the fundamentals of business. As one of our best young creative leaders, Nathaniel's value to the company will be greatly enhanced when he earns his MBA. An accomplished writer and editor with the credentials and training of a business leader is exactly what McCann needs and this is why I see Nathaniel's participation in the Wharton EMBA program as critical to the future of our organization as well as to Nathaniel's personal future.

18. In or about April 2003, Wice learned that he had been accepted to the Wharton EMBA program. The Wharton School of Business is internationally recognized as a premier undergraduate and graduate business school. The EMBA program is open to individuals with significant work experience who stay in the work force and attend classes on weekends throughout the year. Students enrolled in the EMBA program earn their degree in two years.

19. In or about May 2003, after Wice was accepted into the Wharton EMBA program, he completed and submitted a document entitled "McCann-Erickson, Inc. Educational

Assistance Program Enrollment and Grant Application" to Susan Rampersad ("Rampersad"), a representative of the McCann human resources department. The document Wice submitted to Rampersad contained information regarding the two-year MBA program plaintiff would be enrolled in through May 2005, as well as information concerning the cost of the program. The document was signed by Wice and Cheyfitz.

20. On May 22, 2003, after Wice enrolled in the Wharton EMBA program and began attending classes, he received an e-mail from Karla Taylor ("Taylor"), a representative of the McCann HR department, who informed Wice that TPA "does not participate in McCann's Educational Assistance Program." Wice was later told by Taylor that the determination to reject his tuition reimbursement request had been made by Richard Goldman ("Goldman"), head of corporate finance for McCann North America.

21. In or about June 2003, at the behest of Rampersad, and Toni Allende ("Allende"), a TPA HR representative, Wice resubmitted his tuition reimbursement request to Katz. Allende told Wice that the new tuition reimbursement request would be processed as a "McCann" application rather than a "TPA" application.

22. Wice did not receive any information regarding his tuition reimbursement request for months. During that time, plaintiff covered the cost of the EMBA program with his own resources. However, upon information and belief, other IPG/McCann employees who were enrolled in MBA programs received tuition reimbursement from defendants during this time.

23. In or about November 2003, Wice appealed to the publisher of TPA, Jim Small ("Small"), for assistance in obtaining his tuition reimbursement from IPG/McCann. Small contacted Sorbera at McCann on Wice's behalf. In the months that followed, Wice also contacted Sorbera directly to receive reimbursement.

24. On June 28, 2004, Wice and TPA entered into an agreement regarding Wice's tuition reimbursement for 2003. The agreement states that TPA agreed to pay Wice $28,725, or 75 percent of the full tuition cost, for the two semesters of the Wharton EMBA program that Wice attended in 2003. The agreement did not address Wice's tuition for 2004 or 2005. The agreement between Wice and TPA was presented to Wice by Sorbera.

25. Wice continued to pursue his studies and ultimately earned an MBA degree from Wharton in May 2005. During that time, Wice did not receive tuition reimbursement from defendants, although he continued to ask McCann HR representatives for assistance in resolving the issue. However, during this time McCann used Wice's enrollment in the prestigious Wharton program for marketing purposes, such as by featuring Wice's enrollment at Wharton in biographies of Wice supplied to clients as well as prospective clients, including financial services companies such as Fidelity Investments and Bank of America.

26. In or about July 2005, IPG sold TPA in a management buyout. As a result, TPA became a stand-alone company, which is now known as the Publishing Agency. As a result of the TPA sale, Wice's position as editorial director was terminated.

27. In anticipation of the TPA sale, Sorbera sent Wice a document entitled, "Confidential Separation Agreement and General Release." The document was signed by Sorbera and dated June 16, 2005. The agreement offered Wice $500 in severance if he agreed to sign the agreement, which contained a general release of all claims against McCann. The agreement did not mention monies owed to Wice by McCann for tuition reimbursement.

28. Wice did not sign the separation agreement as written. Wice believed that signing the agreement would waive any claims he had against McCann for tuition reimbursement. In addition, Wice believed he was entitled to a larger severance payment based

upon representations made in the IPG employee handbook. Wice told Sorbera that he could not sign the release until the issues regarding his tuition reimbursement and severance were resolved, as well as some concerns about some of the language in the agreement.

29. The IPG employee handbook states that employees are eligible for severance under a variety of circumstances, such as when the employee's position is eliminated or when the employee's office is closed. In addition, the IPG employee handbook states that severance is determined in accordance with the employee's number of years of service with the company.

30. In July 2005, Wice met with Sorbera in an attempt to resolve the tuition reimbursement and severance issues. When Wice and Sorbera could not come to a resolution, Wice wrote to Sorbera regarding his issues with the tuition and severance plans and requested documents concerning any appeals process. Rather than provide Wice with the requested information, Sorbera referred Wice to IPG counsel, Michael Marra ("Marra"). Wice contacted Marra in an e-mail dated August 4, 2005, requesting information regarding the appeals process. Defendants did not provide Wice with a copy of the severance plan until on or about March 14, 2006, when a copy was provided to his attorneys. The plan defendants provided differed from any information Wice had received during his employment concerning severance.

31. Upon information and belief, as part of the TPA management buy-out, TPA management provided McCann with written information about the unresolved issues with respect to reimbursing Wice for his tuition for 2004 and 2005.

<u>FIRST CAUSE OF ACTION</u>

32. Plaintiff repeats and realleges paragraphs 1 through 31 the Complaint with the same force and effect as if set forth herein.

33. In violation of sections 104(b)(4) and 502(c)(1) of ERISA, 29 U.S.C. §§ 1024(b)(4) and 1132(c)(1), defendants refused and failed to provide copies of severance plan documents as requested by plaintiff.

34. In accordance with ERISA sections 104(b)(4) and 502(c)(1), 29 U.S.C. §§ 1024(b)(4) and 1132(c)(1), defendants are liable to plaintiff for payments of up to $100 per day for each day that defendants failed to comply with plaintiff's request for plan documents.

## SECOND CAUSE OF ACTION

35. Plaintiff repeats and realleges paragraphs 1 through 34 of the Complaint with the same force and effect as if set forth herein.

36. Plaintiff and defendants' had written and oral contracts that required defendants' to pay 75 percent of the tuition costs plaintiff incurred while taking job-related graduate courses.

37. Defendants' breach of contract has damaged Wice as described above in the amount of $57,900, which is 75 percent of the total tuition cost of Wice's EMBA program in 2004 and 2005.

## THIRD CAUSE OF ACTION (IN THE ALTERNATIVE)

38. Plaintiff repeats and realleges paragraphs 1 through 37 of the Complaint with the same force and effect as if set forth herein.

39. Defendants' made a clear and definite promise to pay plaintiff 75 percent of the tuition expenses he incurred in connection with obtaining a degree from the Wharton EMBA program.

40. Plaintiff reasonably relied on defendants' promise to reimburse him for 75 percent of the tuition costs he incurred in connection with obtaining a degree from the Wharton EMBA program.

41. Plaintiff was not paid $57,900, or 75 percent of the total cost, for tuition costs he incurred while attending the EMBA program at Wharton in 2004 and 2005.

42. Defendants' failure to fulfill the promise made to plaintiff has damaged Wice, as described above, in the amount of $57,900.

### FOURTH CAUSE OF ACTION (IN THE ALTERNATIVE)

43. Plaintiff repeats and realleges paragraphs 1 through 42 of the Complaint with the same force and effect as if set forth herein.

44. Plaintiff rendered work, services and labor to IPG and McCann in his capacity as editorial director at TPA from February 2002 to July 2005 as alleged above.

45. Defendants' accepted, benefited, and profited from plaintiff's work, services and labor rendered in his capacity as editorial director at TPA from February 2002 to July 2005.

46. By defendants' failure to reimburse plaintiff for any of the tuition costs he incurred by virtue of being enrolled in the Wharton EMBA program during 2004 and 2005, defendants' have been unjustly enriched in the amount of $57,900.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that this Court enter a judgment:

(a) declaring that the acts and practices complained of herein are in violation of ERISA and New York common law;

(b) awarding plaintiff $100 per day for each day defendants failed to comply with plaintiff's request for severance plan documents;

(c) entering judgment against defendants in the amount of the tuition reimbursement improperly withheld under the terms of plaintiff's employment;

(d) awarding plaintiff attorney's fees, costs, and disbursements pursuant to 29 U.S.C. § 1132(g);

(e) awarding prejudgment interest; and

(f) granting such other and further relief as this Court deems necessary and proper.

## DEMAND FOR A TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury in this action.

Dated: New York, New York
       July 27, 2006

VLADECK, WALDMAN, ELIAS &
ENGELHARD, P.C.

By: *[signature]*
Anne L. Clark (AC 6456)
Daniela E. Nanau (DN 1434)
Attorneys for Plaintiff
1501 Broadway, Suite 800
New York, New York 10036
(212) 403-7300

237428 v1